UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JUAN ESCOBEDO,                                          No. 7-14-11269 TL

    Debtor.

JUAN ESCOBEDO,

    Plaintiff,

v.                                                          Adv. Pro. No. 14-1069

YOLANDA DAVIS and
MARCOS PERALES-PINA,

    Defendants.

## **MEMORANDUM OPINION**

The debtor Juan Escobedo ("Debtor") entered into a contract to purchase improved real property from defendant Yolanda Davis ("Davis"). Davis later sued the Debtor for breach of contract and obtained a state court judgment ousting Debtor and his family from possession of the property. Before the deadline to vacate the property the Debtor filed this bankruptcy case, seeking protection of the automatic stay. Knowing of the bankruptcy filing, Davis forcibly dispossessed Debtor anyway. This adversary proceeding for willful violation of the stay is one result. Davis, in turn, has asked the Court for relief from the automatic stay. As set forth below, the Court will award damages to the Debtor for Davis' willful stay violation, and will lift the automatic stay to allow Davis to enforce her state law rights.

                                                I.     FINDINGS

On April 20, 2012, the Debtor and Davis entered into a Contract (the "Sale Contract") for the purchase and sale of property located at 390 Bianes St., Hatch, New Mexico (the "Property").

The Property is improved with a small house built on a foundation, and was sold with a double-wide mobile home that is not permanently affixed (the "Mobile Home").

On June 3, 2013, Davis sued the Debtor in the Third Judicial District Court of New Mexico, commencing an action styled *Yolanda Davis v. Juan Manuel Escobedo,* no. CV-2013-01256 (the "State Court Action"). The case was assigned to Judge Manuel Arrieta. On April 7, 2014, Judge Arrieta conducted a trial on the merits. He ruled from the bench as follows:

--the Debtor was in default under the Sale Contract for failing to make payments, pay taxes, and insure the Property;

--Debtor was ordered to vacate the Property by 5:00 p.m. on May 7, 2014, after which time Davis was to have sole physical possession. The Debtor and his family would have to find somewhere else to live; and

-- No damages were awarded to Davis.

Two days later, the Debtor transferred title to the Mobile Home to his name.

On April 21, 2014, Davis' attorney, Marco Perales-Pina, submitted to the Court a form of "Order on Trial on the Merits". Debtor's state-court counsel did not consent to the entry of the because he had been advised that the Debtor had filed for bankruptcy protection.[1] On April 22, 2014, Judge Arrieta entered the submitted form (the "Final Judgment").

This Chapter 7 bankruptcy case was filed April 26, 2014 (the "Petition Date"). Davis was listed as a creditor, with an address of P. O. Box 283, Radium Springs, New Mexico 88054. On April 28, 2014, Notice of the Debtor's bankruptcy filing was mailed to Davis by the Bankruptcy Noticing Center at this address.

The Debtor was in possession of the Property on the Petition Date, and all of his personal belongings were on the Property.

---

[1] In fact, the Debtor had not yet filed; although he signed his schedules on April 18, 2014, he did not file the petition until April 26, 2014.

On May 7, 2014, at about 5:00 p.m., Davis attempted to evict the Debtor and his family from the Property. At the time, the Debtor was out of town. Davis refused to use the Dona Ana County Sheriff Department's civil legal enforcement division. No request for relief from the automatic stay was requested prior to this eviction attempt. Predictably, there was a disturbance at the Property and the authorities were called.

A deputy from the Dona Ana County Sheriff's department arrived at the Property to find Davis, her husband, and another male relative (who was armed with a pistol), attempting to evict the Debtor's wife and six-year-old son. The sheriff's deputy did an admirable job in trying to sort out the situation. Davis, despite written notice of the bankruptcy filing and being told telephonically by Debtor's counsel, Oralia Franco, that she was in violation of the automatic stay, refused to allow Debtor or his family to remain on the Property. Davis attempted to hit the Debtor's dog with a shovel. Davis threatened to shoot the Debtor if he entered the Property. Davis moved her RV onto the Property to ensure that the Debtor could not enter the Property unseen.

Beginning on April 28, 2014, the Debtor was employed by CLP Resources, installing solar panels in Fort Stockton, Texas. The Debtor missed two days of work to review and sign documents related to the bankruptcy filing. When he missed a third day of work to return to the Property on May 7th because of Davis' actions, he was fired from his job. Missing work because of Davis' actions was not the only reason the Debtor lost his job.

Davis' actions caused the Debtor to suffer actual damages, including loss of personal property (stolen from the Property while the Debtor was dispossessed); lost wages; travel costs; bills for alternate housing; and attorneys' fees. Davis' refusal to allow the Debtor onto the Property continues to this day.

Debtor filed his complaint commencing this adversary proceeding on June 9, 2014. Davis filed her Motion for Relief from Automatic Stay and Abandonment of Property or, in the Alternative, for Adequate Protection, doc. 20, on June 12, 2014 (the "Stay Relief Motion").

## II. ANALYSIS

### A. The Automatic Stay Prevented Davis from Enforcing the Final Judgment.

When a bankruptcy petition is filed, § 362(a)[2] automatically stays any proceeding or enforcement action against the debtor.[3] The scope of the automatic stay is broad. *See Fletcher v. Deerman (In re Deerman)*, 482 B.R. 344, 354 (Bankr. D.N.M. 2012) ("Its scope is extremely broad."); *In re Gindi*, 642 F.3d 865, 870 (10th Cir. 2011), overruled on other grounds by *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) ("The scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate.") (citation omitted). "Any interest the debtor has in property, no matter how insignificant, constitutes property of the estate and renders the automatic stay applicable to bar creditor acts against that interest." *In re Alcom Am. Corp.*, 154 B.R. 97, 103 (Bankr. D.D.C. 1993) (citations omitted).

---

[2] All statutory references are to 11 U.S.C. unless otherwise noted.

[3] Section 362(a) provides, in relevant part, that the filing of a bankruptcy petition, "operates as a stay, applicable to all entities, of-- (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

A mere possessory interest in property, whether or not pursuant to a legal right of possession, is protected by the automatic stay. *See In re Milasinovich,* 2014 WL 644455 (Bankr. D.N.M. 2014), citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427, 430 (2d Cir. 1987) ("Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay.")

The purpose of the automatic stay is two-fold: "The stay protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group." *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2009) citing *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir. 1991).

There is no question Debtor had possession of the Property on the Petition Date, and had the legal right to such possession. The automatic stay, therefore, prevented Davis from evicting Debtor. Davis should have sought stay relief from the Court. Instead she flouted the automatic stay provisions and threw the Debtor and his family off the Property under threat of being shot.

Davis has argued that her actions were permitted under § 362(b)(22).[4] That argument is meritless. § 362(b)(22) provides that § 362(a) does not stay:

> the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor.

---

[4] The exceptions listed under § 362(b) are to be read narrowly. *See In re Stringer,* 847 F.2d 549, 552 (9th Cir. 1988) ("Exemptions to the stay [however] should be read narrowly to secure the broad grant of relief to the debtor."); *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011) ("Courts interpret these exceptions narrowly to give the automatic stay its intended broad application.").

Although the Final Judgment contains language sometimes found in eviction orders, Judge Arietta made clear that the Sale Contract was not a lease. The evidence before Judge Arietta and this Court plainly shows that Davis intended to sell the Property to the Debtor, and that the Debtor intended to purchase the Property over 30 years, putting $10,000 down. Debtor was responsible for property taxes and insurance, provisions standard with sales transactions but rare with consumer leases. The 30-year term also is completely inconsistent with a consumer lease. The § 362(b)(22) exception does not apply.

B.   Davis Willfully Violated the Automatic Stay.

Section 362(k)(1) provides:

Except as provided in paragraph (2),[5] an individual injured by any willful violation of the automatic stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

"A debtor alleging a willful violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed and that the debtor suffered damage as a result of the violation." *In re Kline*, 424 B.R. 516, 524 (Bankr. D.N.M. 2010) (citations and quotation marks omitted). As set forth above, the Debtor has met his burden in establishing that a violation occurred.

To show that a stay violation is willful the debtor must establish "that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. . . . Accordingly, a creditor's good faith belief that it had a right to the property is irrelevant." *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

---

[5] Paragraph (2) deals with repossession of certain types of personal property.

Additionally, "Notice of the bankruptcy filing need not be formal or official to put a creditor on notice." *Id.*

The evidence is compelling that Davis had actual, formal notice of Debtor's bankruptcy filing. Davis' proper mailing address was listed on the Debtor's petition and the Court's BNC Certificate of Notice, doc. 9, shows that the notice was mailed to Davis on April 28, 2014. "[T]he presumption of delivery, which arises when mail is properly addressed, stamped and deposited in the mail, creates a rebuttable presumption that the item was received by the addressee in the ordinary course of mail." *Reading Ventures, Ltd. v. U.S.*, 987 F. Supp. 1315, 1321 (D. Colo. 1997). Davis, who confirmed that the address used was correct, presented no evidence of mailing irregularities or other compelling reasons to overcome the presumption. Additionally, on the sheriff's deputy's video she stated that she had a copy of the notice of bankruptcy.

Even if Davis did not have formal notice before May 7th, she admitted that on May 7th she received actual notice in two ways. First, Oralia Franco told Davis by telephone that the Debtor had filed for bankruptcy, and that Davis would be in big trouble for violating the automatic stay. Davis scoffed at this warning. Second, the sheriff's deputy showed Davis a copy of the notice of bankruptcy on May 7th. Davis may have believed that the automatic stay did not prevent her from evicting the Debtor,[6] but that is irrelevant. Davis committed a willful violation of the automatic stay.

---

[6] There is some evidence that, prior to May 7th, Davis actually consulted a lawyer who told her the bankruptcy filing did not affect her repossession of the Property. If this is true, Davis received very poor advice. This evidence was not expanded upon, however, and the Court cannot find, on this record, that Davis did in fact receive this advice.

C.  Damages for Willful Stay Violation

Once a willful stay violation is proven, the Court must award actual damages, including costs and attorneys' fees. § 362(k)(1). The Court determines that the Debtor's actual damages are as follows:

| Damage Item | Damages Amount | Calculation |
| --- | --- | --- |
| Lost wages and per diem for one day of work | $197 | $14/hr. x 8 hours + per diem ($85) |
| Travel costs from Ft. Stockton to Hatch | $177 | $0.55/mile x 323 miles |
| Items stolen from property and disclosed on schedules[7] | $800 | $500 for jewelry + $300 for television |
| Displacement damages | $500 | Cost of bills paid for by Debtor while living with parents |
| Attorney Fees | $9,980 | Per affidavit filed July 2, 2014, doc. 18[8] |
| Total Actual Damages | $11,654 | |

The award of these damages is mandated by § 362(k)(1). *See In re GeneSys, Inc.*, 273 B.R. 290, 295 (Bankr. D.D.C. 2001) ("[The court] has no discretion to withhold an award of compensatory damages for violation of the automatic stay.").

Section 362(k)(1) also gives courts the ability to impose punitive damages in "appropriate circumstances." There are a variety of interpretations of "appropriate circumstances." *See In re Taylor*, 369 B.R. 282, 289 (S.D.W.Va. 2007) (collecting cases and identifying four separate standards used by many courts). The Tenth Circuit Bankruptcy Appellate Panel has expressly approved of two. First: "[T]he debtor may recover punitive damages when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard

---

[7] The Court is only awarding damages to those items actually disclosed on the Debtor's schedules because the schedules indicate evidence of that property the Debtor actually owned. To the extent the property was not disclosed in his schedules, the Debtor cannot recover money from this Court for those items.

[8] The Court finds that the attorney fees are reasonable.

-8-
Case 14-01069-t    Doc 19    Filed 07/03/14    Entered 07/03/14 14:49:04    Page 8 of 15

of whether he was doing so." *Diviney v. Nationsbank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 776 (10th Cir. BAP 1998). *See also Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005) (identifying "arrogant defiance of federal law" as an appropriate standard). Second: the Court may use a four-factor test looking at: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor." *Diviney* 225 B.R. at 777.[9] Under the Tenth Circuit's standard, a plain reading of the statute, and the guidance from these other cases, it is clear that imposition of punitive damages requires proof of something more than a willful violation of the automatic stay.

In this case, the Debtor has provided such proof. The video evidence shows that Davis had no regard for the effect that bankruptcy law had on the actions she was taking. Davis' only concern was repossessing the Property, bankruptcy law notwithstanding. From her actions, the Court can only surmise that Davis' egregious and malicious misconduct, including a blatant threat to shoot the Debtor and hitting his dog with a shovel, was motivated by ill will or a thirst for revenge. On the other hand, despite having the legal right to possession of the Property by virtue of the automatic stay, the Debtor and his family did not provoke Davis in any way. To their credit, the Debtor and his family cooperated with law enforcement and decided to leave the Property to avoid a violent confrontation. Additionally, considering Davis owns the Property (valued at $90,000) she has the ability to pay for punitive damages. All four elements of *Diviney's* four-factor test weigh in favor of awarding punitive damages.

---

[9] The other standards look to the defendant's maliciousness or bad faith; and whether the defendant's misconduct was egregious, vindictive, or intentional.

Having determined that there are circumstances in this case making an award of punitive damages appropriate, the amount of the award must be determined. In discussing the appropriate award one court has observed:

> An award of punitive damages is [in] part a deterrent, i.e., to cause a change in the creditor's behavior, and in this context the prospect of such change is relevant to the amount of punitive damages to be awarded. But punitive damages are also in part meant to punish egregious conduct. Punitive damages should only be awarded with respect to conduct which is tantamount to thumbing one's nose at the law, the debtor, and the Court.

*In re Galmore*, 390 B.R. 901, 908 (Bankr. N.D. Ind. 2008) (citations omitted). The Court is also mindful of the Supreme Court's directive that "punitives are aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008). The Supreme Court also directs that "Single-digit multipliers are more likely to comport with due process . . . ." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). With these directives in mind, as well as the facts of this case, the Court determines that an award of $7,000 in punitive damages against Davis is appropriate. This is a multiplier of 0.6 of actual damages awarded.

      E.      <u>There is no Evidence that Mr. Perales-Pina Violated the Automatic Stay.</u>

The Debtor accused Davis' attorney, Mr. Perales-Pina of violating the automatic stay. The Debtor's argument is premised on the cases finding attorney stay violations "as a result of their actions or omissions on behalf of their client . . . ." *In re Timbs*, 178 B.R. 989, 995 (Bankr. E.D. Tenn. 1994) (collecting cases). The Debtor also relies on the fact that his counsel sent a letter to Mr. Perales-Pina on May 29, 2014, advising Mr. Perales-Pina of the stay and demanding that Debtor be allowed to regain possession of the Property.

The cases Debtor relies upon are distinguishable. In every case where an attorney was found to have violated the automatic stay, the attorney was an active player rather than a passive

-10-
Case 14-01069-t    Doc 19    Filed 07/03/14    Entered 07/03/14 14:49:04 Page 10 of 15

advice-giver. For example, in *Timbs* the court found the lawyer in violation of the stay because he refused to stop garnishing a debtor's wages post-petition. 178 B.R. at 995. The cases cited by the *Timbs* court are to the same effect. Here, on the other hand, Mr. Perales-Pina did not act or fail to act. The most he could do was to advise his client not to evict the Debtor from the Property.[10] Davis undertook to violate the automatic of her own accord.

E. Davis' Stay Relief Motion.

In addition to the Debtor's complaint for violation of the automatic stay, the Court also held a final hearing on Davis' Stay Relief Motion. The Court may grant relief from the automatic stay for "cause." § 362(d). Cause "is a discretionary determination made on a case-by-case basis." *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 525 (10th Cir. BAP 2002), citing *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987). Because Davis seeks stay relief so she can continue or finalize the State Court Action, the Court should consider the motion using the factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). *See In re Jim's Maint. & Sons, Inc.*, 418 Fed. Appx. 726, 728 (10th Cir. 2011) (unpublished) (noting that the *Curtis* factors "have been widely adopted by bankruptcy courts").

The following table summarizes the Court's analysis of the *Curtis* factors in this proceeding:

| *Curtis* factor | Weighs in favor of continuing stay | Weighs in favor of lifting stay | Does not apply |
|---|---|---|---|
| Whether the relief would result in a partial or complete resolution of the issues; | | X | |
| The lack of any connection or interference with the bankruptcy case; | | X | |
| Whether a specialized tribunal has been established to hear the particular cause of | | | X |

---

[10] The record does not make clear what advice Mr. Perales-Pina gave to Davis. The Court hopes Mr. Perales-Pina advised Davis to seek stay relief before evicting the Debtor.

| | | | |
|---|---|---|---|
| action and that tribunal has the expertise to hear such cases; | | | |
| Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties | | X | |
| The interest of judicial economy and the expeditious and economical determination of litigation for the parties; | | X | |
| The impact of the stay on the parties and the "balance of the hurt." | | X | |
| Whether the foreign proceeding involves the debtor as a fiduciary; | | | X |
| Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; | | | X |
| Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit; | | | X |
| Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c) | | | X |
| Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); | | | X |
| Whether the foreign proceedings had progressed to the point where the parties were prepared for trial. | | X | |

Thus, there are six factors that weigh in favor of lifting the stay, six that do not apply, and none that weigh in favor of keeping the stay in place.

Two overriding issues indicate that stay relief is appropriate in this case. First, it appears to the Court that the Final Judgment terminated the Debtor's rights in the Property, except for a right of possession that expired May 7, 2014 at 5:00 p.m. Because of that, preventing Davis from proceeding with eviction in the State Court Action would burden her without benefiting the Debtor. At trial the Debtor argued that the Final Judgment did not terminate his rights under the

Sale Contract, and that he could cure any defaults as part of a Chapter 13 plan.[11] The Debtor also argues that New Mexico law disfavors forfeitures, and the Final Judgment should not be construed to hold that the Debtor forfeited his $10,000 down payment.

The Debtor is right that real estate contracts are not read to allow forfeitures unless the language is clear and unambiguous. The issue was discussed in *In re Draper*, 2010 WL 963987 (Bankr. D.N.M. 2010) (Jacobvitz, J.):

> A seller's termination of a real estate contract based on the buyer's failure to timely cure a default after notice results in a forfeiture of the buyer's title to the property. Equity abhors a forfeiture. [C]ontractual agreements contemplating forfeitures must be clear and unequivocal before forfeiture would be enforced. Where the language is not clear and unambiguous, the court should choose that construction which avoids a forfeiture. Further, when presented with a forfeiture clause in a contract, courts interpret the contractual language narrowly and construe all inferences against the party seeking to enforce the forfeiture.

*Id.* at *3 (citations omitted). The Court agrees with this analysis, but the facts here are different. The relevant document is the Final Judgment, not the Sale Contract. The plain language of the Final Judgment makes clear that all of the Debtor's rights in the Property were terminated except for a temporary right of possession. The Final Judgment gave the Debtor no ability to cure his

---

[11] The parties agree that the Final Judgment cannot be collaterally attacked in this Court. Preclusion doctrines and the *Rooker-Feldman* doctrine prevent such a collateral attack. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, this Court must "give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *Jarrett v. Gramling*, 841 F.2d 354, 356 (10th Cir. 1988). *See also Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997) citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) (federal courts give the same preclusive effect to state court judgments as those judgments are given by the state court). Under New Mexico law, " a prior judgment on the merits bars a subsequent suit involving the same parties or privies based on the same cause of action. Res judicata will ordinarily preclude a claim where there has been a full and fair opportunity to litigate all issues arising out of that claim." *Myers v. Olson*, 676 P.2d 822, 824 (N.M. 1984). For res judicata to apply, four factors must be met: "1) the parties must be the same or in privity; 2) the subject matter must be identical; 3) the capacity or character of persons for or against whom the claim is made must be the same; and 4) the same cause of action must be involved in both suits." *Id.* In the case at bar, all elements are satisfied and the Final Judgment must be given preclusive effect.

default, nor is it reasonable to construe the Final Judgment as less than the full adjudication of the parties' rights and remedies.[12]

Second, the state court is the appropriate court to determine whether the Debtor's transfer of title to the Mobile Home complied with or violated the Final Judgment. It appears to the Court that the transfer was inconsistent with the Final Judgment. This is not ruling on the issue; Judge Arrieta is in a much better position to determine the matter. It is appropriate to lift the automatic stay so the Mobile Home title issue can be addressed by the state court.[13]

### III. CONCLUSION

Davis should have obtained stay relief before evicting the Debtor and his family from the Property. Davis was aware of the stay but stubbornly refused to follow the law. Like Captain Ahab, she could think of nothing but revenge, and regaining the Property was her Moby Dick. Davis' actions were malicious, egregious, vindictive, in arrogant defiance of federal law, and done without provocation by the Debtor. Davis subjected herself to actual damages of $11,654 and punitive damages of $7,000. The stay violations were Davis' alone; her counsel did not violate the automatic stay.

Nevertheless, cause exists to modify the automatic stay and allow the State Court Action to proceed to completion, including an adjudication of whether transferring title to the Mobile Home was contrary to the Final Judgment.

---

[12] The Final Judgment seems reasonable to this Court. The evidence before Judge Arrieta showed that Debtor was in substantial default under the Sale Contract. Remedies for default were not specified by the contract. Judge Arrieta determined that the fairest remedy was to terminate the contract, award possession to the seller, and deny the Seller any further relief. Other remedies arguably could have been awarded, but Judge Arrieta's ruling seems fair and reasonable.

[13] There also is a dispute regarding the validity of the transfer documents. Davis contends that the Bill of Sale used by the Debtor is a forgery. The Debtor contends that the Bill of Sale was signed by Davis and given to him when he signed the Sale Contract in April 2012. The Court cannot discern the truth of this matter based on the evidence presented.

The Court will enter separate orders or judgments consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 3, 2014.

Copies to:

R. Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004

Oralia B. Franco
2000 E. Lohman, Suite A-1
Las Cruces, NM 88001

J. Marcos Perales-Pina
P.O. Box 8650
Las Cruces, NM 88006